May it please the Court, Good morning, Mr. O'Brien. Edward O'Brien appearing for the petitioner, Anthony Moore. I first apologize to this Court and to Assistant Attorney General Shapiro for my absence at the last scheduled oral argument. We're just glad to see that you're up and well. Well, I am well. I had no idea that my Yahoo email was automatically converting unread messages as read, so I missed the notification and was not aware of the scheduling of the hearing. Again, I apologize to all for the inconvenience. Thank you. As far as this case is concerned, Your Honors, I find that the Massachusetts Appellate Court decision is problematic in that it did not adjudicate all of the raised federal claims that the petitioner had argued in the brief. So I'm looking to ask this Court to apply a somewhat modified standard of review, at least de novo review, at least in part. And the reason for that, Your Honors, is that the Massachusetts Appeals Court only ruled that the photo array was not impermissibly suggestive, and their analysis stopped there. There was no adjudication of the second part of the Brathwaite test as to the reliability of the identifications in light of the corrupting influence of any suggestiveness. But if the Massachusetts Appeals Court was right on that first part, we never have to worry about the second part, right? Well, under the... That's correct. So then why on the first part is there a problem? Well, there were actually at least three federal constitutional issues presented. One was the impermissible suggestiveness of the photo array. But since Mr. Moore was the only one in the lineup who had a facial scar, and the only person in both the photo array and the lineup, the state court did not address the argument that the photo array and the suggestive lineup taken in tandem was impermissibly suggestive. And the Appeals Court did not even discuss the impermissibly suggestiveness of the scar at the lineup. There was a reference to the lineup in a footnote. I believe it was number three of the short opinion. But the Appeals Court only said that none of the witnesses took notice of the order in which Mr. Moore was in. He was number six in the photo array, and he was number six also in the lineup. And why shouldn't we presume under Richter that they did do a full analysis of the suggestiveness of the whole identification procedure, lineup, and array included? Well, I'm looking to overcome the presumptiveness that the fully adjudicated, the merits of all those claims, Your Honor, by pointing out the evidence. I'm looking to distinguish this court's opinion in the Cooper versus Bergeron case. It was a case decided in February of this year in which a pro se plaintiff had made a similar argument. It was a voice identification case. And the petitioner in Cooper asked that the court apply the anti-terrorism and effective death penalty act standard to the issue of the first part of the Brathwaite analysis, but asked for de novo review on the reliability portion. And the court in Bergeron specifically noted that the state court analysis keyed in and addressed the reliability portion in not only the body of the opinion, but in the cases it cited. And similarly in the Hodge case versus Mendonca, there was either explicit or implicitly in the state court opinion that they addressed the merits, whereas in here that is totally lacking, at least as far as the impermissible identification in the lineup and then the two taken together, as well as the reliability portion. Are you also making an argument that even if we thought the court did address the suggestiveness both as to the lineup and as to the array, that it was unreasonably applying federal law with respect to its evaluation of whether they were suggestive? I would have to say yes, Your Honor, that if the court determines that the state court did adjudicate the merits of all these claims, that the state court opinion was still an unreasonable application of federal law. Could you explain why that is? Because the test on unreasonableness, it's of course beyond error. There's a case from the Second Circuit that says, well, the gap needn't be so far beyond error as to amount to, say, judicial incompetence. The appellate court in Massachusetts, the state court, what they said was that, well, it's not impermissibly suggestive because there's no evidence that these witnesses relied solely upon the scourge making the determination, and I would submit federal law from Holliday to Castro-Casado, that that is not required that the distinguishing feature be the sole reason for an I.D., and the eyewitnesses here, more than one, at least two, in addition to recognize, you know, they said that, well, they gave some general descriptions, his facial mask stood out, Jeffrey Burnham said that he noticed the scar in particular, in addition to the angularity of his face, whatever that would mean. Counsel, isn't there another twig in the path that you have to step over? With respect to the photo array, my understanding is that eight people were shown the photo identification, doesn't that, in Massachusetts, as I understand it, in trying to determine whether it was impermissibly suggestive, it's sort of a product-based analysis, you look back to see what happened, and only two of them made the identification, doesn't that fact by itself suggest that it was not impermissibly suggestive? Well, I understand your honest point, and the way that the facts are brought out, it seems to have been a train which picked up momentum as it went along. The teller, Judy Chan Lee, initially doesn't mention a facial scar to the police, but then So when the police went out looking for a suspect, is it Judy Lee? Judy Lee, yes. She hadn't even told them that he had a scar? She is... So far as the record shows? At one point, I think in the suppression hearing, yes. She is all over the place as far as saying, well, yeah, I didn't pick anybody out in the photo array, but I looked at number six, and I said it might be him. She's sort of all over the road when it comes to that. The problem here is we have two dates involved. One is the date of the robbery, and a couple of weeks later, they see an individual looking in a bank, in a couple of banks, and they trace him down. And it's at the second date that I think it's Mr. Copeland, one of the security guards, noticed this guy has a scar, and he's wearing Adidas boots, and he has a distinctive baseball hat. And so there's Mr. Moore, and he fits that description when the police feel he's a homeless person and they go to St. Francis' house, and he's there, he meets the description, he gets the scar. He wasn't wearing the boots or the baseball cap in the lineup? No, no, he wasn't. No, but what the robbery bank employees saw was a person, the common thing was a baseball cap, which is a pretty common article of clothing, and that obscures features. These encounters were brief. I would submit, Judy Chan Lee, she said that she was the teller that was robbed, and she said it was two to three minutes. That is her testimony, but if you look at what she actually said, she comes in, the man approaches, hands up the demand for money, she gives him the money, she's nervous, she's looking at the demand note, she gives the money and he leaves. Hardly, from her description, two to three minutes. I would submit that she could be off on that. I have a question, maybe it's a practical question rather than a legal question, but if you're looking for someone with a scar, if you have a suspect that has a scar, how would you have a lineup that would be valid? Would you have to find five other people with scars and put them up there? Well, I believe this court said identical twins are not required, however, this doesn't go to, say, in Holiday, where the suspect had really... I'm just asking my question as directly as possible, because otherwise you're going to confuse me. Oh, okay. They could have easily either covered the scar or found a photo... Well, if you cover the scar, there's not going to be any identification. Because they're looking for someone who has been identified as having a scar. Yes. And you want to have a lineup. How do you get a lineup except finding other people with scars? Right. Is that the only way you can do it? I agree. Or cover it... There was cases where scars were covered, like under the eye. Don't those cases suggest that everyone in the lineup has the bandage? Everybody in the lineup would have it, so that the scar doesn't stand out as... But how does that answer Judge Duell's concern, which if I understand it, that would make everybody look the same. Right. But they would all look the same because you couldn't see the scar. But if the point of the lineup is to find a suspect who has a scar, you're just saying that feature can't be a feature of the identification. Well, the distinguishing feature, I would say, would have to be muted. If you're looking for... The distinguishing feature of somebody who's being held up and is very nervous, a scar would certainly be something they would be seeing. Yes. Yes. I'm looking at it as if the robber was described as having red hair, then you would want other people in the lineup with red hair. It would be the same principle that this lineup is impermissibly suggested because Mr. Moore is the only one in there with a scar, and that is the distinguishing feature of the robber. So it really stands out. And it was noted, these witnesses said, it really stood out to me, that scar really stood out. That's what they're looking for. And if the appearances are otherwise close, they go for the scar. I'm sorry. It's better not interrupt. I hope that answers your question. Can I ask one question, which I know we'll be on time, which is just, can you speak to the prejudice issue since they found the note in the pocket of the suspect? They did find the note in the pocket. Where's the note? The FBI agent testified that Mr. Moore explained that he lived at the homeless shelter. There was another individual who asked him to hold onto these notes for him, and that was his explanation. And I think that a jury may have believed that, since he lived in a group residence with other homeless people. The key to the case was the identification. That's how I would respond to Your Honor. Thanks. Thank you. Good morning, Your Honors. Before we get into the Certificate of Appealability in the cases that this Court wanted to talk about in the Certificate of Appealability, I'd like to just go back briefly. Justice Howard mentioned we have to look back to the entire picture and see what happened here. And the key question before this Court is whether the Massachusetts Appeals Court reasonably applied Simmons and its progeny. And here it did, because what the critical element here, when I was looking back to prepare for this case, is that none of the witnesses, when agent, I went back to Agent Costello's testimony, because he's the one who interviewed the witnesses. And none of the witnesses to the December 9th robbery mentioned a scar. On cross-examination, the defense significantly cross-examined Agent Costello. And he said, the first time I heard about the scar was from the two witnesses who said that there was a suspicious person outside the two sovereign branches who had a scar. So there was no reason for him to have tied together an array. What's the significance of that as a legal matter? Is the point that you can't have a suggestive lineup unless it was intended to be suggestive? Because I don't read the cases to say that. All of the Supreme Court's line of cases look at the big picture and they say you need to have, suggestiveness is not enough. It has to be suggestive plus impermissible and unnecessary, plus there has to be an element of unreliability. But you're suggesting that there has to be an element of intent on the part of the officers who put together the array. Is that? I think that, yes. Is there a case that says that? Well, if you look at Simmons, if you look at Neal versus Biggers and all of the cases, they all talk about police conduct. And they all talk about looking at the totality of the circumstances. But suppose the conduct is I put together an array in which the suspect stands out amongst all the others. I just can see that he does. I don't know that the way he stands out is a way that any witness has previously told me will make them stand out. But they still do stand out. Well, it depends. So Stovall talked about the exigency of certain circumstances and so did this court in Holliday. Right. But there are certain circumstances where the police can't help but put together a lineup that is suggestive. Is it impermissible, however? And impermissibility, therein lies the key here. And that's why the court So you're saying it was unavoidable here? Well That's a different argument. What I'm saying is that there would have been no reason for the agent to put together a photo array of people with scars, number one, because he had no description of the December 9th robbers if he had done so. Wouldn't that be all the more reason why putting a band-aid on all the witnesses would have been no great burden on the government since they weren't trying to put, just to raise the point, if you're trying to put together a lineup in which the suspect has a scar, it's a problem to cover it. You're suggesting they were not trying to put together such a lineup, so why  would the government lose by doing that other than making sure that one of them doesn't stand out? Well, there may be circumstances where that's a good practice, perhaps, and in each of the three cases that this court mentions in the Certificate of Appealability, they did that, but that wasn't the linchpin there. The Supreme Court has never said that the officers, the police, have a duty to take these precautions. Maybe in certain cases it might be wise, but here this was not such a case and he had no constitutional duty to do so. So what I'm saying is that when you look at the entire picture and you look at the photo array itself, what you see is that although Mr. Moore may have been the only person with a scar, the scar was not so prominent, and in fact two of the witnesses to the December 9th robbery couldn't even ID him from the photo array. What this court has said and what other district courts in the circuit have said, as recently as Cavett and Cormier, for example, is that the officers to determine whether a procedure was impermissibly suggestive, you have to determine whether the other fillers in the array or the lineup were sufficiently similar in appearance. And here that's what the officers did and that's what the Massachusetts Appeals Court found that he did. He put together a photo array with people who were similar in height, weight, ethnicity, the shape of the face. The scar wasn't so prominent. You can see from the pictures the jury had the pictures before them. There was testimony at trial. The defense had a full and fair opportunity to cross-examine the agent. Let's say that if we can get past the question of whether it was unnecessarily suggestive, let's say we find that it was, the next step would be reliability? Yes, Your Honor. And what would be the standard of review for that particular element? So I looked back at my brief and I think on page 33 we say that the Massachusetts Appeals Court didn't reach the merits of the reliability issue, but on page 22 we said that it did. Right. So, you know, the Massachusetts Appeals Court's decision, you know, could have been written a little bit more clearer, but under Cooper v. Bergeron, I must say that, and Harrington v. Richter, that this court and other federal courts must presume that the state court did reach the reliability issue. Again, it's a holistic approach. And in thinking about all the cases that the Supreme Court has come out with and Harrington and Cooper, you know, Cooper was right. You have to apply the Simmons principles in the context of habeas and you have to read the decision pragmatically. And when you read the Appeals Court's decision here, it's clear to me that in looking at the suggestiveness of the ID procedures, they did say that in determining whether it was impermissibly suggestive, you have to give weight to the witnesses' testimony that they didn't rely upon the suggestive element. But I think that goes to also the reliability, because here there were findings by the state trial court judge in his decision that the witnesses had ample opportunity to observe Mr. Moore. He came in two weeks prior to the December 9th robbery, inquired about opening an account, and one witness, Sharmeen Khan, was within two feet of him when he did that inquiry. There was ample opportunity. The bank was well lit. You know, all of those circumstances as we lay out in our brief were there. And it has to be, you have to look at the totality of the circumstances. And because the Supreme Court recognized that each case presents different scenarios, this was a bank robbery. Things happen fast. A couple, three weeks after the December 9th robbery, they got reports of a suspicious person, again, at two sovereign bank branches near the one that was robbed. You know, the suspect could have gotten away. So the court recognizes that there are circumstances that are each different. And because the test is so broad, the Supreme Court, federal habeas courts have, actually state courts, I'm sorry, Your Honors, have significant leeway in applying clearly established federal law. So what if we were to disagree on the particulars of this case and we were to take a de novo look at reliability? How do you fare then? Even then, Your Honors, even under de novo review, Mr. Moore's claim lacks merit. And here's why. And I can go through because here the witnesses each gave a description of the suspect that was similar, African American, about 5 feet, 10 inches tall to 6 feet, his height. The defendant matched the person who was described as the robber and as the December 22nd suspect. They had two witnesses ID'd him from the photo array, two witnesses couldn't. None of the December 22nd witnesses were able to positively ID, although two said it looks like the suspect that we saw. There were factors here. How does that help on reliability? The fact that they couldn't do the ID? Well, it helps in the sense that the scar was not the prominent  They didn't ID the suspect. They didn't identify the suspect. They didn't identify him because of the scar. In this case, we had witnesses who had the opportunity to see the defendant two weeks before the December 9th robbery because he came into the bank. The lighting situations were good. He was standing within close proximity. And in any event, Your Honors, if there was any error here, it was harmless. The defense had ample, the safeguards for due process were there. The defendant put his case before the jury. The jury heard all of the reliability or assessed the credibility of the lineups and the lineup in the photo array. And under Perry v. New Hampshire, we got a look at everything here and everything on this record. There was overwhelming evidence found on the defendant. He was found with a note that matched the note that the robber gave to the tellers. Thank you, Your Honors. Thank you both.